**FILED**

**April 19th, 2016**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time: 2:45 PM**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT MEMPHIS

| | |
|---|---|
| Michael Williams,<br>    Employee,<br>v.<br>PMC Biogenix, Inc.,<br>    Employer,<br>And<br><br>Travelers,<br>    Insurance Carrier. | Docket No.:  2016-08-0177<br><br>State File No.: 15641-2015<br><br>Judge: Jim Umsted |

---

## EXPEDITED HEARING ORDER DENYING EMPLOYER'S PETITION

---

This case came before the undersigned Workers' Compensation Judge on April 13, 2016, upon the Request for Expedited Hearing filed by the employer, PMC Biogenix, Inc., pursuant to Tennessee Code Annotated section 50-6-239 (2015). The central legal issue is whether the employee, Michael Williams, must select an authorized psychiatrist from a panel provided by PMC after previously selecting an authorized psychologist for treatment of a compensable mental injury. For the reasons set forth below, the Court finds Mr. Williams is not required to select an authorized psychiatrist from the panel of psychiatrists provided by PMC.[1]

### History of Claim

Mr. Williams is a sixty-one-year-old resident of Shelby County, Tennessee. He began working for PMC on June 4, 1973. On February 15, 2015, Mr. Williams was working as a Department Maintenance Coordinator in PMC's Distillation Department. He claimed a mental injury after witnessing an explosion at work that day. PMC accepted his claim as compensable and provided him with a panel of psychologists. Mr. Williams selected John A. Cooper as his authorized provider and began treating with Dr. Cooper on March 17, 2015.

---

[1] A complete listing of the technical record and exhibits is attached to this Order as an appendix.

During this initial visit, Mr. Williams advised Dr. Cooper he witnessed a twenty-foot silo tank explode on February 15, 2015. He indicated he was in a building approximately fifty feet away from the tank and coordinated efforts to extinguish the fire. After the fire department arrived, he became very weak and had slurred speech, chest pain, and high blood pressure. He received emergency care at Baptist Hospital for these issues and continued to have problems with regulating his blood pressure and glucose. Mr. Williams also noted social withdrawal, poor sleep, and anxiety about returning to work. Dr. Cooper diagnosed Mr. Williams with post-traumatic stress disorder and began relaxation training. He also opined the work events that occurred on February 15, 2015, caused Mr. Williams' condition.

In the following weeks, Dr. Cooper began therapy to reprocess and defuse Mr. Williams' traumatic memories. Dr. Cooper had Mr. Williams return to the plant to attempt desensitization training. Dr. Cooper kept Mr. Williams off work, but he asked PMC if it would permit Mr. Williams access to the accident site and other areas of the plant to help reduce his anxiety and get him back to work. PMC agreed to provide this access to Mr. Williams, and he returned to work full duty in July 2015. Dr. Cooper placed Mr. Williams at maximum medical improvement on August 13, 2015, and sent a final medical report to PMC's workers' compensation insurance carrier on September 10, 2015, which indicated no permanent impairment related to the work injury.

On October 28, 2015, Mr. Williams returned to see Dr. Cooper after extinguishing fires at work on October 22, 2015, and October 28, 2015. According to Dr. Cooper's office note, these events caused a "significant relapse in his recovery from the posttraumatic stress disorder from the fire on February 15, 2015." Dr. Cooper took Mr. Williams off work based on his opinion that "[t]he traumas he has experienced reduced his functioning to such a point that it would be unsafe for him to work." He indicated that Mr. Williams would begin a more intensive treatment regimen. Thereafter, on November 11, 2015, Dr. Cooper indicated, "I believe we are seeing the cumulative effect of these trauma[s] and that the effects will be deeper and more long-lasting than previously." In light of the relapse, PMC provided Mr. Williams with a panel of psychiatrists from which he could select his authorized treating physician. Mr. Williams refused to sign the panel, indicating he was satisfied with Dr. Cooper's treatment.

Dr. Cooper sent correspondence to PMC on December 4, 2015, asking if it would permit Mr. Williams to visit the plant as it had prior to his return to work in July. In his correspondence, Dr. Cooper noted this was "a successful and key piece of his treatment last time and we are optimistic of its value again." PMC refused to accommodate this request due the significant work interruption the previous accommodation caused. However, it did offer Mr. Williams a job in a different department at his same rate of pay.

PMC, through its attorney, drafted correspondence to Dr. Cooper on January 4, 2016, advising it did not intend to remove Mr. Williams from his care. This

2

correspondence asked Dr. Cooper to address some discrepancies PMC noted in reviewing Mr. Williams' treatment notes. It also asked Dr. Cooper to discuss Mr. Williams' condition in light of the two relatively minor incidents that took place on October 22, 2015, and October 28, 2015.

Dr. Cooper responded in a letter dated January 12, 2016. Dr. Cooper addressed each of PMC's concerns and ultimately concluded,

> I can assure your client that I am confident to a reasonable degree of psychological certainty that Mr. Williams is able to return to work, to his present position, in a step-wise fashion such as he previously did. This is to allow him adequate adjustment time, and to allow all parties to assess his continuing recovery and level of functioning.

Mr. Williams' last visit with Dr. Cooper occurred on February 11, 2016. Dr. Cooper suggested that Mr. Williams consider his alternatives for returning to work as another large fire had broken out at work that day and phone calls from his co-workers concerning the fire caused him to have a physical reaction. Dr. Cooper indicated PMC would not let Mr. Williams return to work until he saw a psychiatrist.

During the Expedited Hearing held on April 13, 2016, neither party presented any live testimony. PMC asserted it provided Mr. Williams with a panel of psychiatrists as an added layer of care. According to PMC, Mr. Williams could continue treating with Dr. Cooper unless the selected psychiatrist determined the treatment was not reasonable or necessary. It argued a psychiatric evaluation was necessary in this case due to the dangerous nature of Mr. Williams' job. It also maintained that only a psychiatrist could provide expert testimony on issues such as permanency and causation. Moreover, it claimed that Dr. Cooper could not be Mr. Williams' authorized treating physician because he is not a physician.

Mr. Williams argued it was PMC's decision to provide a panel of psychologists at the outset of the claim. According to Mr. Williams, he selected Dr. Cooper from the panel and treated with him for over a year. Over the past year, Mr. Williams has built confidence and trust in Dr. Cooper and wants to remain under his care. Mr. Williams further asserted Dr. Cooper never recommended psychiatric treatment or referred him to a psychiatrist. While Mr. Williams admitted a psychiatrist would have to provide expert testimony about any permanent impairment, he noted he was not requesting a rating at this time. Mr. Williams has agreed to undergo a psychiatric evaluation should PMC wish to have an independent medical evaluation completed. However, he asked the Court to find that Dr. Cooper is his authorized treating provider and to reject PMC's unilateral decision to require him to select a new authorized provider.

3

## Findings of Fact and Conclusions of Law

This Expedited Hearing involves Mr. Williams' claim for a mental injury that PMC accepted as compensable. PMC filed for this Expedited Hearing, requesting a resolution of one issue: Whether Mr. Williams must select an authorized psychiatrist from a panel provided by PMC after previously selecting an authorized psychologist for treatment.

An employer must furnish, free of charge to the employee, "such medical and surgical treatment . . . or psychological services as ordered by the attending physician . . . made reasonably necessary by accident as defined in this chapter." Tenn. Code Ann. § 50-6-204(a)(1)(A) (2015). Moreover, the injured employee must accept the medical benefits afforded under this section; provided that "in any case when the employee has suffered an injury and expressed a need for medical care, the employer shall designate a group of three (3) or more independent reputable physicians, surgeons, chiropractors or specialty practice groups . . . from which the injured employee shall select one (1) to be the treating physician." Tenn. Code Ann. § 50-6-204(a)(3)(A)(i) (2015). The employer "shall provide the applicable panel of physicians or chiropractors to the employee in writing on a form prescribed by the bureau, and the employee shall select a physician or chiropractor from the panel, sign and date the completed form, and return the form to the employer." Tenn. Code Ann. § 50-6-204(a)(3)(D)(i) (2015).

The treating physician selected in accordance with subdivision (a)(3)(A) may make referrals to a specialist. *See* Tenn. Code Ann. § 50-6-204(a)(3)(A)(ii) (2015). "The employer shall be deemed to have accepted the referral, unless the employer, within three (3) business days, provides the employee a panel of three (3) or more independent reputable physicians, surgeons, chiropractors or specialty practice groups." Tenn. Code Ann. § 50-6-204(a)(3)(A)(ii) (2015). If the employer provides a panel pursuant to this section, "the employee may choose a specialist . . . to provide treatment only from the panel provided by the employer." *Id.* In all cases where the treating physician has referred the employee to a specialist, "the specialist . . . to which the employee has been referred, or selected by the employee from a panel provided by the employer, shall become the treating physician until treatment by the specialist . . . concludes and the employee has been referred back to the treating physician selected . . . from the initial panel." Tenn. Code Ann. § 50-6-204(a)(3)(E) (2015).

"All psychological or psychiatric services available under subdivisions (a)(1) and (b)(1) shall be rendered only by psychologists or psychiatrists and shall be limited to those ordered upon the referral of physicians authorized under subdivision (a)(3)." Tenn. Code Ann. § 50-6-204(h) (2015).

With these legal principles in mind, the Court finds Mr. Williams sustained a psychological injury, diagnosed as PTSD, which resulted from witnessing an explosion at

4

work on February 15, 2015. PMC accepted Mr. Williams' claim as compensable and provided Mr. Williams a panel of three psychologists for treatment, from which he selected Dr. Cooper. PMC unilaterally chose to provide the panel of psychologists, and it selected the three psychologists to place on the panel. Furthermore, PMC has provided authorized psychological treatment with Dr. Cooper for over a year, and Mr. Williams has accepted this authorized treatment. Dr. Cooper continues to treat Mr. Williams and has not recommended a referral to a psychiatrist. Mr. Williams is satisfied with the treatment provided by Dr. Cooper, and he objects to being forced to see a psychiatrist for treatment. If requested by PMC to see a psychiatrist for an IME, he will do so voluntarily, but he does not want to choose a psychiatrist from a panel as a treating physician who may interfere with the treatment provided by Dr. Cooper. Mr. Williams understands there are legal limitations regarding Dr. Cooper's authority to assign impairment ratings, but at this time, all he wants is psychological treatment.

The Court finds it troubling that PMC initially provided a panel of psychologists instead of a panel of psychiatrists. However, the Court does not have to determine whether this was a proper panel, as PMC provided the panel and Mr. Williams does not question the validity of the panel. At this time, there is no indication in the record that Mr. Williams requires treatment by a psychiatrist. Dr. Cooper has not recommended it, and Mr. Williams has not requested it. The non-expert opinion of PMC representatives that Mr. Williams should accept a panel of psychiatrists for treatment carries no weight with the Court. Accordingly, the Court finds that Mr. Williams is not required to select a treating psychiatrist from the panel provided by PMC.

**IT IS, THEREFORE, ORDERED** as follows:

1. PMC's petition is hereby denied.

2. Dr. Cooper remains Mr. Williams' authorized provider.

3. This matter is set for a Status Hearing on June 27, 2016, at 10:30 a.m. Central time.

**ENTERED this the 19th day of April, 2016.**

**Judge Jim Umsted**
**Court of Workers' Compensation Claims**

5

Status Conference:

A Status Conference has been set with **Judge Jim Umsted, Court of Workers' Compensation Claims. You must call 615-532-9550 or toll-free at 866-943-0014 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of

the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

Exhibits:
1. Affidavit of Jim Grimes;
2. Recorded Statement of Mr. Williams;
3. Records from psychologist John A. Cooper;
4. Correspondence from psychologist John A. Cooper, dated April 5, 2015;
5. Correspondence from psychologist John A. Cooper, dated December 4, 2015;
6. Correspondence from PMC's attorney to psychologist John A. Cooper, dated January 4, 2016;
7. Correspondence from psychologist John A. Cooper to PMC's attorney, dated January 12, 2016;
8. Form C-42 Agreement Between Employer/Employee Choice of Physician;
9. Unsigned Form C-42 Agreement Between Employer/Employee Choice of Physician; and
10. Serious Incident Review Board Reports.

Technical record:
1. Petition for Benefit Determination;
2. Dispute Certification Notice;
3. Correspondence from PMC's attorney, requesting changes and/or additions to the final DCN;
4. Request for Expedited Hearing;
5. PMC's position statement of February 16, 2016;
6. Mr. Yarbrough's position statement; and
7. PMC's position statement of March 31, 2016.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 19th day of April, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| Stephen F. Libby, Employee's Attorney | | | X | steve@lnlawmemphis.com |
| Kevin W. Washburn, Employer's Attorney | | | X | kwashburn@allensummers.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov